The question arose on the following facts: Up to November 23d, 1867, the bankrupt and Sylvester B. Sage were copartners in business, under the name and style of Montgomery & Sage, at Prattsville, in Greene county, as country merchants. On the day named, Sage sold out his interest in the store to Montgomery. The agreement contained this clause: "Also, that the said Henry B. Montgomery take the notes and books of the firm of Montgomery & Sage, and collect the same as far as can be, and, with the proceeds of the same, pay all the liabilities of the firm of Montgomery & Sage, which is this day dissolved, by mutual consent. But if there proves to be a deficiency, or not enough to pay the debts, the remainder is to be paid equally by both parties, and, in case there proves to be an overplus, or more than enough to pay the liabilities, then the balance is to be equally divided between both parties." On the 5th of January, 1869, Sage was adjudicated a bankrupt, on his own petition, and, about one month afterwards, Montgomery was adjudicated a bankrupt, upon the petition of certain of his creditors. Montgomery had continued the mercantile business as successor to Montgomery & Sage, and had, from time to time, replenished the stock of goods, mingling old and new together, and selling from either indifferently, so that it was impossible to tell which were the goods of Montgomery & Sage, and which were the goods of Montgomery alone. Moreover, the entire stock had been sold by the assignee of Montgomery as Montgomery's goods. The register gave his opinion, that the assets in the hands of the assignee should be regarded as belonging to Montgomery's individual estate, and liable, in the first instance, to the payment of Montgomery's individual debts in full, before any portion could be applied to the payment of the debts of Montgomery & Sage.

BLATCHFORD, District Judge. I concur with the register in his conclusion.

[NOTE. This case was again heard upon application of Thomas Montgomery to be allowed to file amended proof of debt. Case No. 9,731.]

―――――

## Case No. 9,728.

### In re MONTGOMERY.

[3 Ben. 565;[1] 3 N. B. R. 374 (Quarto, 97).]

District Court, S. D. New York. Dec. 11, 1869.

BANKRUPTCY — FRAUDULENT PREFERENCE — SURRENDER BY PREFERRED CREDITOR — RIGHT TO PROVE DEBT.

Where a creditor, who had received property from a bankrupt, in preference over other creditors, contrary to the 39th section of the bankruptcy act [of 1867 (14 Stat. 536)], had surrendered it to the assignee: *Held,* that, under the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

23d section of the act, he could prove his debt against the estate.

[Cited in Re Reece, Case No. 11,633; Re Davidson, Id. 3,599; Re Tonkin, Id. 14,094; Re Scott, Id. 12,518; Re Hunt, Id. 6,882; Re Stephens, Id. 13,365; Re Dunkle, Id. 4,160; Re Baxter, 25 Fed. 701.]

[This case was formerly heard upon application of James B. Olney, attorney for the bankrupt, to be paid counsel fees. The application was allowed. Case No. 9,726.]

[2][This is a case of involuntary bankruptcy. Richard P. Burhaus, the assignee in this matter, applied for an order for the examination of Baldwin Griffin, a supposed creditor of the above-named bankrupt, who had proved and filed his claim against the above bankrupt. An order was duly issued on such application, and the said Griffin appeared before the undersigned and submitted to such examination. It appeared, on the examination, that the bankrupt had been a merchant at Prattsville, in Greene county, and that on the 9th day of January, 1869, he executed a bill of sale to Griffin of all the goods in the store and of the books of account of said Montgomery against his customers. The stipulated consideration was nine thousand dollars, from which was to be deducted two thousand one hundred and sixty-eight dollars and forty cents, alleged to be due from Montgomery to Griffin, and the residue was to be paid on various notes and other debts of Montgomery, some twenty-three in number, and which are set out in the bill of sale. Griffin is a brother-in-law of Montgomery, and had been a clerk in his store, and the evidence leaves no doubt upon my mind but that Griffin knew at the time he accepted the bill of sale and the property therein specified, that Montgomery was insolvent, and that this sale was designed to give him, Griffin, and the creditors mentioned in the bill of sale, a preference over the other creditors of said Montgomery. This transaction constituted one of the grounds upon which Montgomery was adjudicated a bankrupt. Griffin voluntarily surrendered to the assignee the property and accounts which he had received under the bill of sale.

[On this state of facts the solicitor for the assignee moved to strike out the claim proved by Baldwin Griffin, and that such claim be disallowed on the ground that Henry B. Montgomery, the bankrupt, being insolvent, or in contemplation of insolvency, on or about the 9th day of January, 1869, made a sale of his goods, chattels, property and estate to the said Baldwin Griffin, of great value, to wit: of the value of nine thousand dollars, with intent to give a preference to one or more of his creditors, or one or more persons who might become liable for him as indorsers or security, in fraud of the act of congress to establish a uniform system of bankruptcy throughout the United States, passed March 2, 1867 [14 Stat. 517]. That said Montgomery

[2] [From 3 N. B. R. 374 (Quarto, 97).]

was, by reason of said sale, among other things, afterwards, and on or about the 20th day of February, 1869, duly declared a bankrupt in and by the United States district court for the Southern district of New York, on the petition of one or more of his creditors, and that the said Baldwin Griffin, at the time of such transfer, had reasonable cause to believe that a fraud on said act was intended, or that said Montgomery was insolvent. Also that said Griffin, since said Montgomery was declared bankrupt as aforesaid, has surrendered to the assignee the property conveyed under said transfer, and accounted for the property sold by him and money collected by him, being part of said property and estate conveyed to him by said Montgomery, thereby acknowledging that said transfer was made to him, with knowledge on his part that a fraud was intended on said act, or with like knowledge that said Montgomery was, at the time of said transfer, insolvent, and that, for the causes aforesaid, said Griffin is not permitted to prove or have allowed his said claim.

[In answer to this motion, the solicitor for Mr. Griffin makes the following points: First. "There is no proof that Mr. Griffin had any reasonable cause to believe that, on taking such payment or conveyance, a fraud on the bankrupt law was intended. Nor is there any proof that he had reasonable cause to believe that Montgomery was insolvent." Second. "It appears from the evidence and from the motion now pending, that Griffin has surrendered to the assignee all property, money, benefit and advantage received by him under the preference or transfer before alluded to, and that he is, therefore, entitled to prove his claim in any view of the case, in accordance with the provisions of section 23 of the bankrupt law." Third. "The motion is too late after the claim has actually been proven."] [2]

By THEODORE B. GATES, Register:

[2] [I think the decision of this question depends upon the construction that shall be given to the latter clause of section 39 of the bankrupt act. Standing by itself, it seems to prohibit the proof of a debt in such a case as the one under consideration. But section 22 provides that if a person shall accept a preference, having reasonable cause, etc., he may nevertheless prove his claim, and receive dividends, if he surrenders to the assignee all property, etc., received by him under such preference. There have been a few decisions of questions involving a construction of these provisions of the bankrupt law, and they have proceeded upon different theories and have arrived at different conclusions upon almost identical facts. I have, therefore, sought to have the intention of the author of the law, and have received from the Honorable Thomas A. Jenckes, M. C., a letter, of which the following is a copy: "Washington, December

8, 1869. Theodore B. Gates, Esq. Dear Sir: —The last clause of the 39th section of the bankrupt act was intended to apply to cases in which the assignee was compelled to resort to legal process to recover the property, by defending which suit the creditor, who claimed to retain the property, would make himself party to the bankrupt's fraud, if any. I do not see that it is inconsistent with the provisions of the 23d section, by which a creditor, holding any of the bankrupt's property, can remove the stain of fraud by surrendering the property, and disclaiming all intent to become a party to the bankrupt's fraudulent proceedings. I think Judge Fox, of Maine, and Judge Field, of New Jersey, have given opinions to this effect upon these clauses. Respectfully yours, T. A. Jenckes." I adopt this construction, and recommend that an order be entered denying the motion of the assignee's solicitor.] [3]

BLATCHFORD, District Judge. The construction given by the register to the 23d and 39th sections of the act is the correct one, and the motion of the assignee should be denied.

[NOTE. This case was subsequently heard upon motion of James B. Olney to be allowed to file supplemental proof of debt. Case No. 9,729. Afterwards, upon motion of assignee, the proof of debt filed by Jonathan B. Cowles was stricken out. Id. 9,730. The priorities of creditors were determined in Id. 9,727, and finally Thomas Montgomery was not allowed to file amended proof of debt. Id. 9,731.]

---

## Case No. 9,729.

### In re MONTGOMERY.

[3 Ben. 566;[1] 3 N. B. R. 423 (Quarto, 108).]

District Court, S. D. New York. Dec. 11, 1869.

BANKRUPTCY — PROOF OF CLAIM — MOTION FOR LEAVE TO AMEND—CONTROL OF COURT THEREOVER.

Where a creditor filed a proof of debt on May 28th, 1869, and in the following October was examined by the assignee, and then applied to amend his proof of debt: Held, that his application should be granted.

[See In re Parkes, Case No. 10,754.]

[This case was formerly heard upon application of bankrupt's attorney to be paid counsel fees. Allowed. Case No. 9,726. It was afterwards heard upon motion of assignee to strike out claim of Baldwin Griffin, a preferred creditor, who had surrendered his preference. Motion allowed. Id. 9,728.]

[2] [By THEODORE B. GATES, Register: James B. Olney, one of the creditors of the above-named bankrupt [Henry B. Montgomery], proved his debt against said bankrupt, individually, on the 28th day of May, 1869, at the sum of two hundred and twenty-five dol-

---

2 [From 3 N. B. R. 374 (Quarto, 97).]

3 [From 3 N. B. R. 374 (Quarto, 97).]
1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
2 [From 3 N. B. R. 423 (Quarto, 108).]